IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ALISSA D. MITCHELL, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL ACTION NO. 5:07-CV-1201-KOB |
|  | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. Introduction

The claimant, Alissa D. Mitchell, filed an application for Disability Insurance Benefits and an application for Supplemental Security Income benefits on February 24, 2005, alleging disability commencing on June 15, 2004 caused by a fractured wrist.  The Commissioner denied the claims.  The claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 23, 2006. In a decision dated December 6, 2006, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income benefits. On April 27, 2007, the Appeals Council denied the claimant's request for review. The claimant has exhausted her administrative remedies, and accordingly, this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court will **affirm** the Commissioner's decision.

## II. Issues Presented

In this appeal, the claimant contends that the ALJ's decision is not supported by substantial evidence. First, the claimant alleges that the ALJ failed to accord the proper weight to the opinion of Dr. Muhammad Ata, her treating physician, and to consider the disabling side effects of the claimant's medication. Second, the claimant asserts that the ALJ did not properly apply the pain standard.

## III. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination, the Commissioner employs a five-step, sequential evaluation process:
>
> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

Absent a showing of good cause to the contrary, the Commissioner must accord substantial or considerable weight to the opinions of treating physicians. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1998). The ALJ must articulate specific reasons for failing to give the opinions of treating physicians controlling weight and those reasons must be supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the ALJ must apply a three-part "pain standard," which requires:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or
> (3) that the objectively determined medical condition is of such severity that it can be reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991.)

## IV. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ, *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## V. Facts

Claimant was born March 19, 1971 and was thirty-five years of age at the time of the Commissioner's decision. (R. 264). Claimant has a high school education. (R. 264). Her past work experience includes employment as a bailer, a beam operator, a spinning operator, and a carpenter's helper. (R. 61). Claimant testified that she had been disabled since June 15, 2004, and is unable to work due to problems with her right wrist, back, and hands. (R. 275-77, 279).

The claimant was injured in an accident on June 15, 2004, and visited Dr. Muhammad Ata, her physician since 2000, who referred her for orthopedic evaluation. (R. 116, 125). The claimant was admitted to Jackson County Hospital on June 16, 2004, where Dr. George Buckner, an orthopedist, performed an open reduction and external fixation of a Colles fracture of the right wrist. (R. 102, 107). This was followed by repeated visits to Dr. Buckner for check-ups and evaluation of her progress. (R. 129-45). On November 10, 2004, Dr. Buckner referred the claimant to Dr. Phillip Maddox, who found that the injured wrist had dorsiflexion, which is flexion in a backwards direction to about 15 degrees and volar flexion to about 15 degrees, radial deviation to about 5 degrees, supination to neutral and pronation to about 45 degrees; he

recommended further physical therapy. (R. 112-13). On June 1, 2005, the claimant returned to Dr. Ata, who noted that the claimant appeared unable to use her right hand for gainful employment. (R. 192). Dr. Ata also advised a follow-up with an orthopedic surgeon for another opinion. (R. 192). At an appointment on January 19, 2006, Dr. Ata noted that the claimant had restricted wrist movements, and again advised a follow-up with an orthopedist. (R. 192). Dr. Ata prescribed the claimant's pain medication, hydrocodone. (R. 100). At the hearing, the claimant testified she took hydrocodone three to four days out of the week to relieve her pain. (R. 283).

On February 22, 2006, the claimant saw Dr. John Walker, an orthopedist. (R. 199). Dr. Walker noted stiffness of the wrist; that the claimant could flex her wrist down 45 degrees, and had supination and pronation of about 60 degrees, while the flexor carpi radialis was very taut; and that the claimant could flex the fingers well. (R. 199). Dr. Walker stated that the wrist was in "fairly good shape," but the claimant did not have normal use of the wrist. (R. 199-200). Dr. Walker told the claimant that the only option to improve the wrist would be more surgery and aggressive therapy, which would not guarantee improved extension. (R. 200). On May 2, 2006, the claimant returned to Dr. Walker for aid in completing a disability form. (R. 229). Dr. Walker stated in a letter that the claimant was severely limited due to her injury; that any job requiring wrist deflexion would not be possible; and that the claimant's lifting of the right upper extremity should be limited to five pounds frequently and ten pounds occasionally. (R. 198). This opinion pertained only to the claimant's upper right extremity, and Dr. Walker recommended that the claimant see a physician that specialized in disability determination. (R. 229).

In addition to the right wrist fracture, the claimant was treated for back pain starting on April 19, 2004, and underwent a coccygectomy to remove her coccyx on June 26, 2006 by Dr.

Calame Sammons. (R. 171, 219). On August 14, 2006, Dr. Sammons noted that the claimant had some discomfort with her knees and opined that the claimant would continue to have hip problems, but should get better with additional time. (R. 215). Additionally, the claimant has a history of eczema, for which she has seen Dr. Ata and Dr. Patrick Kilgo. (R. 192, 206). The records show the claimant has been treated for sinus problems since 2000 by Dr. Ata, and in an effort to relieve chronic sinusitis, she underwent a septoplasty to correct a nasal septum deformity on May 9, 2006 by Dr. Darby Marshall. (R. 124, 210).

    Dr. Ata completed a Physical Capacities Evaluation ("PCE") on March 3, 2006, noting that the claimant was limited to lifting five pounds occasionally, could sit for four hours, and stand or walk for four hours out of an eight hour work day. (R. 187). Dr. Ata also noted that pain was present to such an extent as to be distracting to adequate performance of daily activities or work; that physical activities would increase the pain to a degree as to cause distraction from or total abandonment of tasks; and that the side effects of prescription medications could be expected to be severe and to limit effectiveness due to distraction, inattention, and drowsiness. (R. 188-89).

    The ALJ noted that the claimant had not performed substantial gainful work since the date of the accident, June 15, 2004. (R. 16). The ALJ found that the claimant had status post comminuted, or shattered, fracture of the right wrist, residual right wrist contracture, status post septoplasty, status post coccygectomy, lumbar osteoarthritis, and eczema. (R. 16). The ALJ stated that these impairments were severe, but not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 20).

    The ALJ determined that the claimant had the residual functional capacity ("RFC") to preform light work, and found the claimant's allegations of daily disabling pain inconsistent with

the records. (R. 20). The ALJ decided that the claimant's "impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 21). In making this determination, the ALJ relied on Dr. Walker's opinion that the claimant could lift five pounds frequently and that the wrist was healing. (R. 21). The ALJ found his opinion consistent with the medical evidence of record, and the claimant's accounts of daily activities, such as performing household chores, mowing the grass on a riding lawnmower, driving an automobile, and riding a motorcycle. (R. 20-21). The ALJ gave little weight to Dr. Ata's opinion after determining that Dr. Ata relied too heavily on the subjective reports of limitations provided by the claimant. (R. 21).

During the claimant's hearing, the ALJ posed a hypothetical situation to the vocational expert ("VE") regarding whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and RFC. (R. 285-86). Dr. Ata's pain assessment was not presented to the VE, because the ALJ stated that if it were credible then it would obviously be disabling. (R. 285). The VE testified that an individual with the RFC that the ALJ described would be able to perform work as a gate guard, hostess, and ticket taker, which are jobs that exist in significant numbers in the national economy. (R. 286). The VE went on to state that the pain level to which the claimant testified would be disabling for any kind of employment. (R. 286).

## VI.  Discussion

### A.  The Opinion of the Treating Physician

The claimant alleges that the opinion of Dr. Ata, as the claimant's primary treating physician, should have been given more weight.  Eleventh Circuit case law is clear that a treating

physician's opinion must be given substantial weight unless good cause can be shown to the contrary.  *See, e.g., Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ may discredit a treating physician's report for good cause when that report is not accompanied by objective medical evidence within the totality of the medical records.  *See Crawford v. Comm'r of Soc. Sec.* 363 F.3d 1155, 1159 (11th Cir. 2004). A doctor's opinion can be deficient if it fails to account for a patient's diverse daily activities. *Moore v. Barnhart*, 405 F.3d at 1212. Good cause may also exist where the doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d at 584-85; *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

      The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Moreover, in determining the weight accorded to medical opinions, the ALJ must consider a variety of factors including the examining relationship, treatment relationship (length, nature and extent), supportability, consistency, specialization, and any other factors which tend to support or to contradict the opinion.  20 C.F.R. § 416.927(d).

      In this case, the ALJ found that Dr. Ata's opinion carried little weight because it relied too heavily on the claimant's subjective testimony.  The ALJ discredited Dr. Ata's opinion on the basis that the report was not objective, stating that Dr. Ata "seemed to uncritically accept as true most, if not all, of what the claimant reported." (R. 21). The records show problems with restricted wrist movement, but no objective basis for Dr. Ata's  statements in the PCE regarding the severity of the claimant's pain. Instead, the ALJ accorded great weight to the opinion of Dr. Walker. Dr.

Walker focused solely on the claimant's right wrist, and similarly noted the restricted wrist movement. However, Dr. Walker determined that the wrist was "in good shape," and his references to surgery were not to alleviate the claimant's pain but instead an effort to restore extension. The ALJ stated that Dr. Walker's opinion is supported by the claimant's daily activities, which do not indicate disabling pain. Dr. Walker's opinion was based on x-rays of the claimant's wrist, and his own observations of the claimant's limitations, and not on the claimant's allegations of limitations that were the basis of Dr. Ata's notes. Dr. Walker's relationship with the claimant was of a much shorter duration than the six year relationship between Dr. Ata and the claimant. However, as an orthopedic specialist, Dr. Walker had more knowledge of the specific problems encountered by the claimant. At many points in the medical records, Dr. Ata told the claimant to visit an orthopedic surgeon for an opinion. This emphasizes Dr. Ata's lack of specialization in that field.

  The other medical records indicate that the claimant underwent successful surgeries to correct the problems causing her pain. Dr. Sammons stated that the claimant would experience some hip problems, but expected it would improve with time. Dr. Ata's own records show that he prescribed pain medication, but most pain complaints were followed by surgery recommendations, with which she complied. From these records, the ALJ reasonably concluded that Dr. Ata's statements on the PCE regarding the claimant's pain were overly subjective and conclusory. In holding that Dr. Ata's opinion was conclusory, the ALJ clearly articulated a good cause to reject the opinion.

  The claimant further alleges that the ALJ failed to properly consider Dr. Ata's testimony that the claimant's medication produces side effects that interfere with her ability to work. When a

claimant complains of side effects, the ALJ has a duty to investigate whether the claimant's medications <u>could</u> cause the complained of side effects, and failure to do so is grounds for reversal or remand. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). The only reference to side effects is the PCE Dr. Ata completed on March 3, 2006. In the PCE, Dr. Ata noted that the drug side effects could be expected to be severe, and limit effectiveness. As the doctor prescribing the pain medication, Dr. Ata had knowledge of the likely side effects of the drugs. However, the record does not indicate that the claimant actually suffered from these possible side effects. At the hearing, the claimant testified that the pain was intense enough to take hydrocodone three to four times a week, but did not say that this affected her ability to function. The record includes no notes from any of the doctors indicating that the claimant complained of side effects from the medication. Without evidence of actual effects on the claimant, or the claimant even complaining of side effects, the ALJ had no cause to investigate whether the medication could cause the complained of problems.

   **B.  Application of the Pain Standard**

The claimant's next allegation is that the ALJ failed to properly apply the pain standard in determining that she was not entitled to benefits. The three-part pain standard applies when the claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *See Holt v. Sullivan*, 921 F.2d at 1223; *see also "Assessing the Credibility of an Individual's Statements,"* SSR 96-7p 134 *(*July 2, 1996*)* (explaining the factors to be considered in assessing the credibility of an individual's statements, such as daily activities and doctors' opinions). The pain standard requires evidence of an underlying medical condition <u>and</u> either objective medical evidence that confirms the severity of the alleged pain arising from that

10

condition or that the objectively determined medical condition is of such severity that it can be reasonably be expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d at 1560. When assessing a claimant's subjective complaints of pain, the ALJ must state explicit and adequate reasons for not crediting a claimant's testimony. *See Holt v. Sullivan*, 921 F.2d at 1223. In the present case, the ALJ found the claimant's statements concerning daily disabling pain to be inconsistent with the claimant's reports of daily activities, as well as the favorable reports by the claimant's doctors following each surgery.

      The court notes some confusion in the ALJ's listing of the claimant's daily activities. The activities are found at different parts in the record, and include some household chores, cutting grass on a riding lawnmower, driving an automobile, and riding a motorcycle. (R. 20). However, the record reflects that the claimant ceased certain activities as her condition worsened. For example, the claimant stated that the coccygectomy on June 26, 2006 interfered with mowing the lawn. (R. 269). Records also show that back pain interfered with the claimant's ability to ride her motorcycle since June 12, 2006. (R. 223). The other daily activities the claimant mentioned at the hearing were caring for her puppies, performing household chores, and driving an automobile. These activities alone are sufficient evidence to support the ALJ's finding. *See Moore*, 403 F.3d at 1212 (supporting the ALJ's finding of inconsistency when the claimant alleging disabling pain could drive, provide childcare, and perform housework). The surgical records are also inconsistent with the claimant's testimony. While Dr. Sammons opined that the claimant would continue to have hip problems, he also noted that the claimant would improve with time. At the hearing, the claimant testified that her pain was only severe enough to require medication on three to four days out of the week, a statement that is itself inconsistent with complaints of daily disabling pain.

The ALJ found that the claimant's subjective complaint's were inconsistent with the medical record as a whole. The ALJ's assessment of the claimant's credibility is clearly articulated and supported by evidence in the record as a whole. Accordingly, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's testimony of disabling pain is not supported by the objective medical evidence in the record.

## VII. Conclusion

Based on the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the decision of the Commissioner will be **affirmed**.

The court will enter a separate Order in conformity with this memorandum opinion.

DATED this 31st day of July, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE